# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURG, 1875.

### Pittsburg and Steubenville Railroad Co. *versus* Allegheny County.

1. An Act of Assembly authorized a county to subscribe for stock in a railroad company, and to pay for it in the bonds of the county, bearing interest, to be issued for that purpose, the county to make provision for the payment of interest as in other cases of its bonds, and the railroad company to receive bonds at par as cash. *Held*, that the act contemplated an exchange of the stock as a full equivalent for the bonds, and that the county should occupy no better position than other stockholders.

2. The county contracted with the company to take stock to be paid for by the bonds, and the directors covenanted that the company should, during the time the bonds had to run, pay interest on the stock to the persons who might hold the bonds in discharge of their interest. The act of incorporation did not authorize the company to pay interest on stock. *Held* that the contract with the county was *ultra vires*.

3. The powers of a corporation must be found in its charter or arise by necessary implication from it.

4. The directors in contracting for a bonus to the county on its subscription, were, independently of the Act of Assembly, acting without authority, and the corporation was not bound.

5. A corporation as well as a natural person may repudiate a contract executed by an agent without authority.

6. Fowler *v.* Scully, 22 P. F. Smith 456; Pittsburg & Connellsville Railroad Co. *v.* Allegheny, 13 Id. 126, followed.

October 4th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, and WOODWARD, JJ.

(210)

Error to the Court of Common Pleas of *Allegheny county* : Of October and November Term 1869, No. 15.

This was an action of debt brought December 6th 1864, by the county of Allegheny against the Pittsburg and Steubenville Railroad Company.

The claim of the plaintiff was for $344,314.50.

The affidavit of claim averred that by contract of July 15th 1853, and June 12th 1854, with the defendant, the plaintiff subscribed for 10,000 shares of the stock of the defendants, and paid for the same in bonds of plaintiff which would become due in thirty-two years, and in consideration thereof the defendant agreed to pay interest at the rate of six per cent. semi-annually on the stock for thirty-two years, at the same place and on the same days as the bond interest would become payable; that the bonds were sold and delivered to different persons; that the company paid the interest as they covenanted to do until January 1856, but after that time failed to pay the interest on the stock; and that in consequence of the failure the county had become liable to pay and had paid large sums of money for interest on the bonds.

The case was tried May 5th 1865, before Sterrett, P. J., when a special verdict was rendered, finding the following facts:—

By an Act of March 24th 1849 (Pamph. L. 1850, p. 952), the Pittsburg and Steubenville Railroad Co. was incorporated, subject to the provisions of the General Railroad Law of February 19th 1849 : Pamph. L. 62, 2 Br. Purd. 1211 *et seq.* By the ninth section of the Act of 1849, it is enacted " that the dividend (of a railroad corporation) shall in no case exceed the amount of the net profits actually acquired by the company, so that the capital stock shall never be impaired thereby."

By the Act of February 24th 1853, Pamph. L. 133, the commissioners of Allegheny county were authorized, on the recommendation of one grand jury, to subscribe for an amount not exceeding 10,000 shares of the stock of the defendants, and to borrow money to pay for the stock and make provision for the principal and interest as in other cases of the loans of that county, the bonds to bear interest at the rate of six per cent., for which coupons were to be issued ; the bonds to be payable and transferable at such times and places as the commissioners might deem expedient, and should be received as cash at par by the company in payment of the subscription to stock, and the county, in lieu of voting for officers of the company, shall be entitled to appoint a director for every 5000 shares of stock.

By the Act of April 20th 1853, sect. 22, Pamph. L. 315, the defendants were authorized to borrow $500,000 and issue bonds therefor, to be secured by mortgage on their road and property, with authority to the city of Philadelphia to subscribe for stock of the company, &c.   By the Act of May 2d 1853, sect. 4, Pamph.

[Pittsburg & Steubenville Railroad Co. *v.* Allegheny County.]

L. 652, the defendants were authorized to borrow money not exceeding the amount of their capital stock, and issue bonds, to be secured by mortgage on their property and franchises.

On the 13th of June 1853, the grand jury of Allegheny county recommended that the county of Allegheny should subscribe for 10,000 shares of the capital stock of the defendants, agreeably to the Act of February 24th 1853.

On the 2d day of July 1853, the commissioners of Allegheny county resolved to subscribe for 6000 shares of the stock of the defendants, amounting to $300,000, payable in bonds of the county in thirty-two years, with coupons attached for the interest, payable semi-annually, at the rate of six per cent. per annum, upon the following terms:—

1. The defendants to accept for the subscriptions the county bonds at par as cash in payment of the 6000 shares of stock.

2. The defendants to issue certificates to the county for the stock as might be required in sums of not less than $100 each, *with interest at the rate of six per cent. per annum, payable semi-annually for thirty-two years after the date of the certificate,* on the same days and at the same places as the interest on the county bonds are made payable, and to the holders of the coupons thereof.

3. The defendants to pledge the capital stock of the company, their railroad, all their real and personal property then owned or thereafter to be acquired by the company, to the county, for the payment of the interest on the stock for thirty-two years, and to pay to the county the excess over six per cent. of dividends that might be declared on the stock of the company.

The directors of the company accepted the proposition, and entered into a contract with the county in accordance with it. On the 13th of July 1853, the 6000 shares of stock were issued and paid for by bonds of the county to the amount of $300,000.

By Act of March 22d 1854, Pamph. L. 182, the defendants were authorized to issue bonds bearing interest at seven per cent. per annum, and to make any bonds "which it has heretofore been authorized to issue for the construction and equipment of its road, convertible into the stock of its company at par, or on such terms as may be agreed upon."

At a meeting of the county commissioners, June 10th 1854, it was resolved to subscribe for 4000 shares more of the stock of the railroad company upon the terms as to payment, &c., of the former contract. The resolution was submitted to the directors of the company, who accepted the proposition of the county, and a contract in accordance with it was entered into; 4000 additional shares were issued to the county, and in payment for them the bonds of the county to the amount of $200,000, with interest coupons, were delivered to the company.

[Pittsburg & Steubenville Railroad Co. v. Allegheny County.]

During the years 1854, 1855 and 1856 the company, in accordance with the contracts, paid the interest to the holders of the bonds, but had failed to make any payment of interest since 1856; before the institution of the suit the county had paid interest coupons to the amount of $242,458.76.

In May 1856 the company entered into a lease with J. S. King and A. W. Thompson, by which King & Thompson agreed to finish the railroad and pay to the stockholders four per cent. per annum on $1,500,000 of the stock of the company payable semi-annually for twenty years, the term of the lease ; the agreement was afterwards changed and in lieu of the per centage on the stock, King & Thompson agreed to pay 40 per cent. of the gross earnings during the lease ; the first payment to be made July 1st 1857 ; the contracts with King & Thompson were unanimously agreed to by the board of directors, including two directors chosen by the county commissioners, and were also unanimously agreed to by the stockholders, including the county, at a meeting called for the purpose. King & Thompson never paid the company either money or interest under the contract, and the lease was assigned by King & Thompson, with consent of the defendants, to the Western Transportation Company ; that company never paid anything to the defendants under the lease, and was still in possession of the railroad ; when the county subscribed there was 6000 or 7000 shares of stock owned by other persons.

In a suit in the Circuit Court of the United States, by George L. Ashmead, judgment was obtained on the 4th of December 1860 against the county ; the stock of the county in the defendant's company was levied on under a fi. fa. and 9900 shares were sold at marshal's sale ; the stock thus sold was not transferred to the purchasers, the secretary of the company under the advice of counsel, refusing to permit the transfers to be made.

The questions of law submitted by the special verdict were : If the court should be of opinion that the plaintiff was entitled. to recover the whole amount paid for coupons which had matured before the institution of this suit, the jury found for the plaintiff $242,458.74.    If of opinion that the plaintiff was entitled to recover only the amount paid for coupons which matured previously to the sale on the execution out of the Circuit Court, &c., the jury found for the plaintiff $153,974.80.    If of opinion that plaintiff was not entitled to recover for coupons maturing after the first payment to be made by King & Thompson, the jury found for plaintiff $45,910.90.    If of opinion that the plaintiff was not entitled to recover, the jury found for the defendant.

The court afterwards entered judgment on the verdict for the plaintiff for $242,458.74.

The defendants took a writ of error and assigned for error : that the court erred in entering judgment against the defendants.

[Pittsburg & Steubenville Railroad Co. v. Allegheny County.]

*G. P. Hamilton* (with whom were *J. H. Hampton* and *T. Cuyler*, for plaintiff in error.—The railroad company had no power to make a contract to pay interest on their stock; it was *ultra vires*, against public policy and a fraud on the non-assenting stockholders: Com. v. Erie & N. E. Railroad Co., 3 Casey 399; McMasters v. Reed, 1 Grant 339; Miller v. Pitts. & C. Railroad Co., 4 Wright 237; Pitts. & C. Railroad Co. v. Allegheny, 13 P. F. Smith 136. Want of corporate powers may be taken advantage of by a private party: Fowler v. Scully, 22 P. F. Smith 460.

*G. Shiras, Jr.* and *J. H. Sewell*, for defendant in error.—A contract to pay interest out of the earnings would be valid; there being nothing to show to the contrary the presumption is that this interest was to be paid in that way : Kilgore v. Buckley, 14 Conn. 362; Nelson v. Eaton, 26 N. Y. 410; Farmers' L. & T. Co., 3 Id. 470; Roussin v. Ins. Co., 15 Mo. 244; Mutual Ins. Co. v. Davis, 12 N. Y. 569; Toledo v. Cleveland & T. Railroad Co., 6 Ohio St. 489.

Mr. Justice GORDON delivered the opinion of the court, November 4th 1875.

The Act of 24th of February 1853, did but authorize the county of Allegheny, through its commissioners, to subscribe to the stock of the Pittsburg & Steubenville Railroad Co. It conferred upon· the county no power to loan money. To pay for this subscription the commissioners were authorized to issue interest-bearing bonds, which the railroad company was required to receive as cash at par. This act, so far from contemplating that the company was to pay the interest upon these bonds, provided that the county commissioners should make provisions therefor as in other cases of bonds of the said county. It is therefore obvious that the legislature contemplated an exchange of the stock of the company as a full equivalent for the bonds of the county, and that the county should occupy no other or better position than other subscribers to the stock of the road. It certainly did not intend that, as to dividends, the county shares should be preferred. When, therefore, the company contracted to· pay an annual interest of six per cent. on the county stock, for a period of thirty-two years, it certainly exceeded its authority. If such power existed, we have not been informed of it; and we need no more than repeat the rule, so often expressed in our books, that the powers of a corporation must be found in its charter, or arise by necessary implication therefrom.

This company was incorporated by a special Act of Assembly, approved March 29th 1849, subject to the provisions of the Act of February 19th 1849, commonly known as the General Railroad Act. This latter recited act not only does not confer the power

[Pittsburg & Steubenville Railroad Co. *v.* Allegheny County.]

contended for by the plaintiff below, but in express terms prohibits the exercise of any such power.

The 9th sect. provides that the " directors shall in no case" (in declaring dividends) " exceed the net profits actually acquired by the company, so that the capital stock shall never be impaired thereby." In case of a violation of the provisions of this section, the directors are made individually liable for the amount of the capital stock so paid out. Now from the special verdict, we find that the company paid the accruing interest upon the county stock for the years 1854, 1855 and 1856. The road was then unfinished ; for from the same source we discover that in May 1856, the road was leased to King & Thompson for the term of twenty-one years, they agreeing to finish the road and pay to the stockholders thereof four per cent. per annum on $1,500,000; subsequently modified to forty per cent. on gross earnings. King & Thompson afterwards assigned to the Western Transportation Company, but neither of these parties have ever paid anything to the company. It is therefore quite certain that the interest paid on the county stock came out of the capital of the company, and it is equally certain that if we compel a further payment it must be drawn from the same source. The special verdict thus exhibits a contract prohibited by the statute, and it follows that it cannot be enforced : Fowler *v.* Scully, 22 P. F. Smith 456. And, as is said by Justice Agnew in that case, the argument that the state alone can call in question the legality of the act of the company has no place here.

Leaving, however, the Act of Assembly out of the question, there yet remains the fact that in thus contracting with the county for a bonus on its subscription, the directors of this company were acting without authority. Such being the case, the corporation was not bound. The prime object of the creation of this company was the building of a railroad, an undertaking in which the public was largely interested. It was to be built, if at all, from money subscribed to its stock. If, however, the money so raised must first go to the payment of interest upon these very subscriptions, it is obvious that it would soon be consumed and thus the main object of the organization defeated. Again, if the county of Allegheny was alone to receive this annual dividend, bonus or interest, as it may happen to be designated, the remaining shareholders might well complaim that the contract is a fraud upon their rights. It is true that those shareholders who assented to the arrangement might be estopped from calling it in question, but as it could not affect such as did not assent to it, or those who subsequently subscribed, an estoppel could not be worked against the company : Bailey *v.* Gas & Coal Co., 19 P. F. Smith 340 ; 1 Redf. on Railways 617. This court sustained a similar subscription in the case of the Pittsburg & Connellsville Railroad Co. .*v.* The County of

[Pittsburg & Steubenville Railroad Co. *v.* Allegheny County.]

Allegheny, 13 P. F. Smith 126, only on the ground of an Act of Assembly authorizing it, and though the contract, like that in controversy, stipulated for the payment of interest for thirty years on the bonds issued by the county in payment of its subscription, yet it was held that such interest was payable only for and not beyond the time specifically fixed by the act ; that was until the completion of the road. Thompson, C. J., who delivered the opinion of the court, says : " Without express authority or beyond the limits of authority conferred, we think the company had no power to bind its stockholders, who constituted the company, to pay the interest to the county of Allegheny for the period of thirty years or any other period." This authority being full and to the point, we may rest upon it. In addition to this we may notice the fact that the county has no such peculiar equities as would evoke the doctrine of estoppel in its favor even were we in a position to apply it. The county received the same compensation for its subscription that others did. It can stand on no higher level and can ask for no greater consideration than its fellow shareholders. All got for their money or bonds just what the law contemplated they should get, viz.; shares of the company's stock. If it turned out to be worthless as to one, it was worthless as to all, hence there is no reason why the county should be preferred to the individual shareholder. We have been cited to many authorities showing that the misuse or abuse of its corporate powers does not necessarily avoid its contracts made under such abuse of authority. These authorities are neither impugned nor doubted; they simply do not apply to the case under consideration, for it is not to be doubted but that not merely a corporation, but also any natural person, may repudiate a contract executed by an agent without authority. In the case in hand, the directors of the Pittsburg & Steubenville Railroad Company, in executing the contract with the county, acted *ultra vires* in that they agreed that the county shares of stock should bear interest, and having so acted, the company may well repudiate that contract.

The judgment of the court below is reversed.